IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY THURMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 6017 |
| | ) | |
| CHICAGO POLICE OFFICER GORMAN | ) | |
| (Star #14913), and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

On December 17, 2009, plaintiff Beverly Thurman ("Thurman") filed a First Amended Complaint (Dkt. No. 18) against the City of Chicago ("City") and Officer John Gorman[1] ("Officer Gorman") (collectively "Defendants"). In the First Amended Complaint, Thurman brings four counts against the Defendants: Fourth Amendment unlawful seizure under 42 U.S.C. § 1983 (Count I); conversion under Illinois law (Count II); intentional infliction of emotional distress under Illinois law (Count III); and indemnity under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102 (Count IV). (Dkt. No. 18)[2]

---

[1] Defendant John Gorman is incorrectly identified in the First Amended Complaint as "Officer Groman." (Dkt. No. 18.)

[2] Although the Defendants' Amended Local Rule 56.1(a)(3) Statement of Undisputed Facts correctly identifies the counts in Thurman's First Amended Complaint (*see* Dkt. No. 62 ("Defs.' Am. Local R. 56.1(a)(3) Stmt.") ¶ 2), both the Defendants' Motion and Memorandum in Support of Their Motion for Summary Judgment refer to the counts listed in Thurman's original complaint (Dkt. No. 1). (*See* Defs.' Mot. 1-2; Dkt. No. 60 ("Defs.' Mem.") at 1-2.) The Defendants also state that "[c]ounsel for Plaintiff stipulated to the dismissal of Count III of Plaintiff's Amended Complaint [Thurman's intentional infliction of emotional distress claim]" (Defs.' Am. Local R. 56.1(a)(3) Stmt. ¶ 2), but they have not identified such a stipulation in the record, and Thurman appears to dispute whether she has agreed to the dismissal of that claim

(continued...)

Currently before the court is the Defendants' Motion for Summary Judgment (Dkt. No. 59), which requests summary judgment on Counts I, II, and IV of Thurman's First Amended Complaint. For the reasons explained below, the Defendants' Motion for Summary Judgment is denied.

BACKGROUND

For purposes of the Defendants' Motion for Summary Judgment, the relevant facts of this case are described below in the light most favorable to Thurman. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).[3]

I.  The Parties

Thurman was the owner of a dog named Roscoe Thurman. (Dkt. No. 66 ("Thurman's Local R. 56.1(b)(3) Resp.") ¶ 5.) Officer Gorman is a member of the Chicago Police Department (*id.* ¶ 6), and the City is a municipal corporation which employs Officer Gorman (*id.* ¶ 7).

II.  Events Giving Rise to Thurman's Claims

Thurman routinely left her dog, Roscoe, at her parents' house at 9351 South Sangamon Street in Chicago, Illinois during the day when Thurman went to work (*id.* ¶ 10; Thurman's Ex. 2, Thurman Dep. 24:20-25:20), and the dog usually was kept in the fenced-in yard on the

---

[2](...continued)
(*see* Dkt. No. 66 ("Thurman's Local R. 56.1(b)(3) Resp.") ¶ 2). Thus, for purposes of the Defendants' Motion, which does not address Thurman's intentional infliction of emotional distress claim (Count III), the court assumes that claim remains at issue in this case.

[3] The Defendants did not file a response to Thurman's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. Consequently, under Local Rule 56.1(a), unless Thurman's facts are controverted by the Defendants' Amended Local Rule 56.1(a)(3) Statement, they have been deemed admitted.

Thurman property (Thurman's Local R. 56.1(b)(3)(C) Stmt. Add'l Facts ¶ 4).

Michael Anthony Chrismon ("Chrishom") is the U.S. Postal Service mail carrier that services the area where Thurman's parents live. (Thurman's Local R. 56.1(b)(3) Resp. ¶ 12.) He delivered mail to the Thurman home for several years and was very familiar with the Thurman family as well as Thurman's dog, Roscoe. (*Id.*) Around 11 a.m. on October 1, 2008, Chrismon saw Roscoe loose and unattended, going up and down the street and barking. (*Id.* ¶ 13.) Chrismon called 311 to report that the dog was loose. (*Id.*) According to Chrismon, he called 311 and not 911 because he "didn't think it was an emergency." (Thurman's Ex. 4, Chrismon Dep. 11:15-19.) Chrismon then went to the next block to deliver mail until the dog was secured. (Thurman's Local R. 56.1(b)(3) Resp. ¶ 13.)

Officer Gorman was on patrol on October 1, 2008, when he received a radio dispatch regarding a vicious animal in the area of 9351 South Sangamon Street. (*Id.* ¶ 18.) The corresponding narrative on the computer screen in Officer Gorman's police car read: "pitbull just tried to attack the mailman." (Thurman's Ex. 8, Oct. 1, 2008 Chi. Police Dep't Event Query.) When Officer Gorman arrived at the location, he saw Thurman's dog standing in front of the Thurman home, unrestrained and unattended. (Thurman's Local R. 56.1(b)(3) Resp. ¶ 19.) During his deposition, Officer Gorman testified that he exited his vehicle and was walking toward the residence that Roscoe was standing in front of when the dog charged at him. (Defs.' Ex. 5, Gorman Dep. 28:18-20.) According to Officer Gorman, at that moment, he perceived a threat of great bodily harm and had only seconds to make a decision. (*Id.* at 31:16-21; 60:7-14.) He took his pistol from his belt, shot once, and put down the animal. (*Id.* at 29:4-14; 32:12-16.)

Before Officer Gorman shot Roscoe, Chrismon was delivering mail at a business at 93rd

3

Street and Sangamon Street. (Chrismon Dep. 15:18-16:3.) Chrismon saw Officer Gorman down the block and yelled to the officer to tell him where the dog lived. (*Id.* at 15:18-16:6.) After going inside the business to deliver the mail, Chrismon heard the shots.[4] (Thurman's Local R. 56.1(b)(3)(C) Stmt. Add'l Facts ¶ 21.) He then returned to the Thurman residence at 9351 South Sangamon Street, where he told Officer Gorman, "I thought you heard me. I was telling you where the dog lived." (*Id.* ¶ 22.) In response, Officer Gorman told Chrismon, "That's a pit bull and I don't play with pit bulls." (*Id.*)

Joann Williams, who lives at 9323 South Sangamon Street, was standing outside her home at the time of the shooting. (Thurman's Ex. 5, Williams's Aff. ¶¶ 3, 6-7.)[5] According to Williams's affidavit, she saw "a white male police officer standing behind his police vehicle facing the Thurman residence." (*Id.* ¶ 7.) Williams "shouted down the street and told the officer not to shoot the dog." (*Id.* ¶ 8.) "One second later," Williams "heard the loud pop sound of the gun and saw Roscoe running off the grass hollering." (*Id.* ¶ 8.) Williams never saw "the dog charge . . . or otherwise attack" Officer Gorman (*id.* ¶ 9), and the dog had been "in front of the Thurman's residence on the lawn the entire time [Williams] observed him prior to being shot" (*id.* ¶ 11). Williams, however, did not witness the actual shooting. (Thurman's Local R.

---

[4] The actual number of shots Officer Gorman fired is unclear from the record. According to Officer Gorman, he shot the dog once (Gorman Dep. 32:12-16); Chrismon, however, testified that he heard "shots" (Chrishom Dep. 16:4-7).

[5] In their Amended Local Rule 56.1(a)(3) Statement, the Defendants state that Williams "refused to appear for a deposition and stated that she was elderly and infirm and unable to travel for a deposition." (Defs.' Am. Local R. 56.1(a)(3) Stmt. ¶ 30.) The Defendants, however, have not moved to strike Williams's affidavit. Because the affidavit comports with the requirements of Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602, the court has considered it in connection with the Defendants' Motion for Summary Judgment.

56.1(b)(3) Resp. ¶ 32.) Before October 1, 2008, neither Thurman, Chrishom, nor Officer Gorman had ever witnessed Roscoe biting anyone. (Thurman's Local R. 56.1(b)(3)(C) Stmt. Add'l Facts ¶ 26.)

LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, "[a]ll facts and reasonable inferences are to be construed in favor of the nonmoving party." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (quoting *South v. Ill. EPA*, 495 F.3d 747, 751 (7th Cir. 2007)). Morever, "[i]t is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

ANALYSIS

I.  Count I–Unlawful Seizure in Violation of 42 U.S.C.§ 1983

The Fourth Amendment to the U.S. Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. As the Seventh Circuit has explained, "[a]ny Fourth Amendment inquiry necessarily begins with a determination of whether a . . . seizure actually occurred." *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). Upon a finding that a seizure has occurred, "the next question is whether the seizure was unreasonable." *Id.*

In this case, the Defendants argue that they are entitled to summary judgment on

Thurman's § 1983 unlawful seizure claim for two reasons. First, Officer Gorman's shooting of Thurman's dog, Roscoe, did not constitute a Fourth Amendment seizure because, according to the Defendants, "the Seventh Circuit has never definitively stated that the destruction of a dog constitutes a seizure under the Fourth Amendment." (Dkt. No. 60 ("Defs.' Mem.") at 3.) Second, assuming that the killing of a dog could constitute a Fourth Amendment seizure, "Defendants contend that the seizure of Plaintiff's dog was reasonable and justified." (*Id.* at 4.) The court disagrees.

In *Viilo v. Eyre*, 547 F.3d 707 (7th Cir. 2008), the Seventh Circuit expressly recognized that "the killing of a companion dog constitutes a 'seizure' within the meaning of the *Fourth Amendment*." *Id.* at 710 (adopting the conclusion of "[e]very circuit that has considered the issue" and holding that "the killing of a companion dog constitutes a 'seizure' within the meaning of the *Fourth Amendment*"). Thus, the Defendants' contention that "the Seventh Circuit has never definitively stated that the destruction of a dog constitutes a seizure under the Fourth Amendment," is unfounded and directly contradicts the binding precedent of that court.

Because the Defendants do not dispute that Office Gorman shot and killed Thurman's dog (*see* Defs.' Am. Local R. 56.1(b)(3) Stmt. ¶ 25), the only remaining question is whether the seizure was reasonable. *See Carlson*, 621 F.3d at 618. In *Viilo*, the Seventh Circuit explained that "the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." 547 F.3d at 710. Defendants argue that Officer Gorman acted reasonably because he "testified credibly and clearly that after the pit bull started to charge him, he had no choice but to put down Plaintiff's pit bull" and Thurman has presented "no proof to the contrary." (Dkt. No. 68 ("Defs.' Reply") at 2.) The court is not

6

persuaded by these arguments.

First, in the self-defense context, the Seventh Circuit has cautioned that "[t]he award of summary judgment to the defense in deadly force cases may be made *only with particular care where the officer defendant is the only witness left alive to testify.*" *Abdullahi v. City of Madison*, 423 F.3d 763, 772 n.7 (7th Cir. 2005) (emphasis in original). In this case, the court finds that Thurman's inability to present testimony from a witness who actually observed the shooting does not automatically entitle the Defendants to summary judgment on Thurman's § 1983 unlawful seizure claim.

Furthermore, Thurman has presented sufficient circumstantial evidence, when viewed in the light most favorable to Thurman, to create a genuine issue of material fact as to whether Officer Gorman acted reasonably in shooting Thurman's dog. *See id.* at 772 ("[C]ases may always be proven by circumstantial evidence where direct evidence is unavailable."). For example, Defendants do not dispute that neither Thurman, Chrishom, nor Officer Gorman ever witnessed Roscoe biting anyone. (Thurman's Local R. 56.1(b)(3)(C) Stmt. Add'l Facts ¶ 26.) In addition, Chrishom testified that he called 311, as opposed to 911, to report the loose dog because he "didn't think it was an emergency" (Pl.'s Ex. 4, Chrismon Dep. 11:15-19), and Williams attests that she never saw "the dog charge . . . or otherwise attack" Officer Gorman before the shooting (*id.* ¶ 9). This evidence, coupled with Officer Gorman's statement to Chrishom that he did not "play with pit bulls" (Thurman's Local R. 56.1(b)(3)(C) Stmt. Add'l Facts ¶ 22), supports the reasonable inference that Officer Gorman's actions were not in response to an "immediate danger" but rather the result of his personal policy against "play[ing] with pit bulls." Because a reasonable jury could discount Officer Gorman's testimony and

7

instead infer from the circumstantial evidence that Roscoe did not present an "immediate danger" to Officer Gorman, the court finds that Thurman has presented a genuine issue of material fact with respect to the reasonableness of Officer Gorman's actions. Defendants' Motion for Summary Judgment on Thurman's § 1983 unlawful seizure claim (Count I) accordingly is denied.

II.     Officer Gorman's Qualified Immunity Claim

Defendants also argue that Officer Gorman is entitled to qualified immunity on Thurman's § 1983 unlawful seizure claim. To defeat a claim for qualified immunity, a plaintiff must establish that (1) the defendant violated the plaintiff's constitutional rights under the plaintiff's version of the facts and (2) "those rights were clearly established at the time the defendant[] acted." *Moss v. Martin*, 614 F.3d 707, 709 (7th Cir. 2010); *see also Viilo*, 547 F.3d at 710. In this case, the court finds that Officer Gorman is not entitled to qualified immunity.

First, as discussed above, Officer Gorman's shooting and killing of Thurman's dog constitutes a seizure under the Fourth Amendment, and a genuine issue of material facts exists as to whether shooting the dog was reasonable. Viewing the evidence in the light most favorable to Thurman and drawing all reasonable inferences in her favor, the court finds that under Thurman's version of the facts, Officer Gorman violated her constitutional rights. Second, in *Viilo*, which involved a qualified immunity claim, the Seventh Circuit recognized that a constitutional right against the unnecessary killing of a companion pet was "clearly established." 547 F.3d at 710-11. Consequently, Defendants' request for summary judgment on their claim that Officer Gorman is entitled to qualified immunity is also denied.

III.    Count II–Conversion Under Illinois Law

A claim for conversion under Illinois law requires that the plaintiff show "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). The Defendants argue that Officer Gorman cannot be liable for conversion because he "acted reasonably in putting down an animal that posed an imminent threat of death or great bodily harm to himself or others." (Defs.' Mem. 15.) As addressed above, however, the court finds that the reasonableness of Officer Gorman's actions cannot be resolved by this court on summary judgment but rather is a question of fact for a jury. The Defendants' request for summary judgment on Thurman's conversion claim (Count II) is denied.

IV. *Monell* Claim Against the City

Apparently relying on Thurman's original complaint, the Defendants also argue that they are entitled to summary judgment on Thurman's § 1983 failure to train claim because Thurman cannot establish municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). (*See* Defs.' Mem. 11.) Although Count 2 in Thurman's *original* complaint asserted a § 1983 failure to train claim against the City (*see* Dkt. No. 1 ¶¶ 30-34), Thurman's First Amended Complaint does not include such a claim. Thus, to the extent that the Defendants' arguments relate to Count 2 in Thurman's original–and now superceded–complaint, their Motion for Summary Judgment on that count is denied as moot. Alternatively, to the extent that the Defendants are raising *Monell* issues to argue that they are entitled to summary judgment on Thurman's claim under the Local Governmental and Governmental Employees Tort

Immunity Act, 745 ILCS 10/9-102 (Count IV), they have not addressed that statute in either their Motion or their supporting Memorandum. Consequently, the Defendants' Motion for Summary Judgment on Count IV of Thurman's First Amended Complaint is denied.

## CONCLUSION

For the reasons explained above, defendants City of Chicago and Officer John Gorman's "Motion for Summary Judgment" (Dkt. No. 59) is denied. The case is scheduled for trial on January 18, 2011, at 10:00 a.m. All previously set dates remain in effect. The parties are strongly encouraged to discuss settlement.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 16, 2010